Argued and submitted June 24, 1981, reversed in part and remanded
with instructions January 11, reconsideration denied March 23,
petition for review denied May 18, 1982 (293 Or 146)

## CITY OF GRESHAM,
*Petitioner,*

*v.*

## REALTY INVESTMENT COMPANY et al,
*Respondents.*

## (LUBA No. 80-085, CA A20117)

638 P2d 1177

Matthew R. Baines, Gresham, argued the cause for petitioner. With him on the brief was Thomas Sponsler, Gresham.

James A. Cox, Lake Oswego, argued the cause and filed the brief for respondents.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

ROBERTS, J.

## ROBERTS, J.

Petitioner seeks judicial review of a decision by the Land Use Board of Appeals (LUBA) holding, in part, that petitioner's designation of respondent's property for low density residential development was unsupported by facts in the record.[1] We reverse.

In August, 1975, the City of Gresham began a process to draw up a replacement for the comprehensive plan it had originally adopted in 1969. By April, 1980, a proposed plan map had been completed and distributed to city residents. On that map, the northern 28 acres of respondent's 36-acre plot were designated low density residential. This portion of the property had previously received preliminary subdivision plat approval from the city and was zoned R-7, for residential dwellings at 7,000 square feet per unit. The remaining 7.5 acres of land were designated moderate density residential, with a small corner designated industrial.

By a letter dated May 20, 1980, apparently written at the suggestion of the city's planning staff, respondent requested that all the land be designated moderate density residential. The staff recommended a split designation for the 28 acres, with the northern half, adjacent to an existing subdivision, to be designated low density residential and the southern half, adjacent to the 7.5 acres already designated moderate density residential, likewise designated moderate density residential. At a public hearing held June 17, 1980, respondent appeared and objected to the split designation of the 28 acres, outlining its desire to build duplexes on the land and emphasizing the difficulty if the parcel were not developed as a whole. The planning staff recommended that the split designation be retained; one alternative suggested by the staff was that the entire 28 acres be designated low density residential.

---

[1] LUBA considered two of respondent's six assignments of error: first, that the decision concerning respondent's property was "so vague, confusing and uncertain that a reasonable person could not determine the actual result," and, second, that the decision was arbitrary and capricious. LUBA's holding was that the designation decision was unsupported by facts in the record and that the southern boundary line of the residential portion "was so vague and uncertain that it must be declared to be invalid." The city does not appeal from that portion of LUBA's order relating to the boundary line.

On June 23, 1980, the city council met to make its final determinations on the comprehensive plan. The purpose of the meeting as stated in the minutes was "* * * for the City Council members to review the new testimony submitted June 17, 1980, and to propose any plan revisions they might have." The council then voted to change the designation of all of respondent's land — the 28 acres previously under discussion, plus the adjacent 7.5 acres (except the small industrial parcel) — to low density residential. Changes in designations of two other pieces of property, not owned by respondent, were considered, but not acted upon. On the following day, June 24, 1980, the council adopted the two ordinances at issue, incorporating the new designation for respondent's property. These ordinances were titled "An Ordinance Adopting the Gresham Comprehensive Plan, Repealing the Previous Comprehensive Plan and Declaring an Emergency," and "An Ordinance Adopting a Codification of the Ordinances of the City of Gresham entitled 'City of Gresham Code,' Repealing Certain Ordinances and Declaring an Emergency."

Respondent's contention is that by including the smaller 7.5 acre parcel in the portion designated low density residential, petitioner acted arbitrarily in that "no facts or evidence were considered in the alleged decision to change the designation thereon."[2] Respondent is in error.

LUBA held that the city's action in redesignating the 7.5 acres had no basis in fact, based upon its reading of the record:

"All there is concerning this property is Mr. Daniel's statement that there were a couple of lots below the Glocca Morra subdivision designated MDR and councilman Hansen's statement that his motion included that area as well."

Because our reading of the record convinces us that there was considerably more evidence before the council which was considered in taking the action on respondent's 7.5 acres, we find the factual basis for the designation was not

---

[2] Respondent, according to LUBA, conceded during oral argument that the city's action designating the 28 acres in the previously approved subdivision for low density residential development was "unchallengable" [sic].

arbitrary. The record shows that at the public hearing on June 17, 1980, at which respondent presented testimony, discussion of the 28-acre property takes 12 pages of transcript. At this time, respondent discussed its desire to build duplexes "at the low end of the moderate density scale" on the whole 28-acre tract. There was recognition expressed by both the council and the developer of the difficulty of placing a boundary between low and moderate density areas. The council also expressed its concern over the fact that, whatever the respondent's express intentions, once the property was designated moderate density, it was appropriate for construction of apartments. The developer agreed that attached duplex housing similar to the type they hoped to develop could be built to satisfy a low density requirement.

In the discussion on June 23, which covers some 14 pages of transcript, the city council discussed the fact that the developer had been satisfied with the original designation of the 28 acres for single-family homes and noted that it was the city planning staff which had suggested the moderate density designation for half of it in the comprehensive plan. A motion was made to retain the original designation and to keep the property low density. That was when the adjacent 7.5 acre parcel was specifically included in the low density designation.

"[Planning Director] * * * There's a point of clarification. There are two — a couple of lots below the Glocca Morra — the Glocca Morra piece is a square one — yeah, there — and there are lots that are south of that — yeah, right in there — that are not part of the Glocca Morra piece of property but they were treated the same. They were designated moderate density residential.

"P. Bentley — And what were they before?
"R. Walker — R-10 or R-20.
"K. Hansen — My motion — to include that whole area.
"R. Daniels — Okay.
"M. Opray — Down to Powell.
"K. Hansen — Down to Powell.
"R. Walker — Down to Powell.

From the comments of the council members it appears that this designation was believed to be the most effective way

to accommodate the existing preliminary plat approval for a low density residential development and to avoid the boundary-setting problem between low and moderate densities, since the 7.5 acre parcel appears to abut the low density residential subdivision, without separation by a major road. The 7.5 acres were discussed as a separate entity and the council acted without confusion in including all the land in the low density designation. We note, in fact, that the council member who expressed the opinion that this parcel, located alongside a major street on one side, was an ideal location for apartments, voted "no" on the proposal to designate it low density.

We do not understand that LUBA reversed the city's designation of respondent's property for lack of substantial evidence. Oregon Laws 1979, ch 772, § 5(4), provides:

"(4) The board shall reverse or remand the land use decision under review only if:

"(a) The board finds that the city, county or special district governing body:

"(A) Exceeded its jurisdiction;

"(B) Failed to follow the procedure applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner;

"(C) Made a decision that was not supported by substantial evidence in the whole record;

"(D) Improperly construed the applicable law; or

"(E) Made a decision that was unconstitutional; or

"(b) After review in the manner provided in section 6 of this 1979 Act, the commission has determined that the city, county or special district governing body or state agency violated the state-wide planning goals."

LUBA cited subsection (4)(a)(C), the substantial evidence portion of the statute, only in a footnote to its opinion. Respondent's brief on appeal emphasizes LUBA's authority to decide constitutional questions. Similarly, respondent's brief before LUBA argued the evidence question as arbitrariness, a constitutional issue. We interpret LUBA's order to reverse the city's action on the basis of subsection (4)(a)(E) for a constitutional violation.[3] The question before

---

[3] Neither party argues this case should be decided on any other basis.

us is the validity of LUBA's ruling that the city's action was unsupported by *any* evidence and was therefore arbitrary. The city's action was not arbitrary.

Reversed in part and remanded with instructions to modify the order consistent with this opinion.